James H. WILLIAMS, Sr., Petitioner,

v.

DISTRICT OF COLUMBIA DE- PARTMENT OF PUBLIC WORKS, Respondent.

No. 10–AA–45.

District of Columbia Court of Appeals.

Submitted March 5, 2013.

Decided May 2, 2013.

James H. Williams, Sr., pro se.

Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Esther Yong, Assistant Attorney General, filed a brief for the respondent.

Before EASTERLY and McLEESE, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

Petitioner seeks review of a decision by the Office of Administrative Hearings (OAH) imposing fines totaling $5,000 for four violations of the Litter Control Ad-

ministration Act (the Act)[1] and applicable regulations, plus mandatory penalties totaling $2,500 for failure to file timely responses to notices of the first two violations. Petitioner alleges a number of procedural defects and contends that the fines and penalties are not supported by substantial evidence of record. Because one of the fines is excessive, and, further, because it is unclear whether mandatory penalties are warranted (or, if they are, what the total should be), we reverse in part and remand the case for further proceedings.

## I.

On April 10, 2009, a Department of Public Works (DPW) inspector served petitioner with two notices[2] alleging violations on April 6, 2009, of regulations governing the storage and disposal of solid wastes at 2209 M Street, N.E.[3] The first notice, K161105, specified a violation of "21 DCMR 700.3,"[4] designating it as a "same violation within 60 days."[5] The notice described the violation as "[u]ncontainerized solid waste providing food and/or breeding places for rodents or causing a potential fire hazard." It assessed a $2,000 civil fine (because of two identical violations within a sixty-day time frame)[6] and required abatement within 72 hours. The notice advised petitioner to "[p]rovide a licensed trash collection on a regular basis to [his] tenants. Keep [his] property clean at all times. Bait for rodents. Don't feed rodents." In addition, the notice instructed petitioner to "SIGN and RETURN this form WITHIN 14 DAYS of the date of service" and, in doing so, to "ADMIT, AD-

1. D.C.Code § 8–801 *et seq.* (2001).

2. *See* 24 DCMR § 1305.1 (1987) (requiring service "by means of personal service, certified mail, or conspicuous posting"). The certificate of service for notice K161105 indicates that the notice was served both by certified mail and by conspicuous posting on the premises; the certificate for notice K161106 confirms service by certified mail only.

3. *See* D.C.Code § 8–802(a)(1) (2009 Supp.) (empowering the Mayor to enforce solid waste collection regulations and authorizing adjudication of contested cases arising from violations of the regulations).

4. 21 DCMR § 700.3 (1995) (providing that "[a]ll solid wastes shall be stored and containerized for collection in a manner that will not provide food, harborage, or breeding places for insects or rodents, or create a nuisance or fire hazard").

5. Respondent stated in its original brief (filed January 12, 2012) that petitioner had received two prior notices of the same kinds of violations (K160764 and K160765) after inspection of petitioner's property on March 30, 2009. The notices assessed fines of $1,000 and $500, respectively. It is not clear whether petitioner responded to those notices, as neither the notices nor any responses were included in the record before OAH. *See Mack v. District of Columbia Dep't of Emp't Servs.*, 651 A.2d 804, 806 (D.C.1994) (this court "cannot consider ... evidence not presented to the agency"). Although these notices are therefore not available to us, for the sake of argument we shall assume from respondent's original brief that these alleged violations were the ones that led to the designation of notices in this case (K161105 and K161106) as "same violation[s] within 60 days." Clarity came to some extent, however, five days after respondent filed its original brief when respondent sought to file an amended brief. On February 16, respondent filed (with this court's permission) a "revised" brief that omitted almost all references to the prior notices, as respondent's counsel learned that OAH had "dismissed these two earlier notices." Respondent did not state when the earlier notices had been dismissed, or whether they had been dismissed before issuance of the subsequent notices. Counsel confirmed, however, that respondent "will not rely on these two earlier notices" in this appeal.

6. The fine increases from $1,000 to $2,000 for a second violation within a sixty-day period. 24 DCMR § 1380.2 (2004).

MIT WITH EXPLANATION[,] or DENY" the charged violations.[7]

The second notice served the same day, K161106, was on the same form as notice K161105 but charged a violation of "21 DCMR 705.1"[8] and assessed a $500 fine. The notice faulted petitioner for having "[n]o licensed solid waste collector" and also indicated that it was a "same violation within 60 days."[9]

On April 27, 2009, the same inspector served petitioner with notices for two more violations on the same premises, committed on April 17, 2009.[10] Notice K161638 was similar to the first notice of a solid waste violation (K161105) and cited petitioner for another violation of "21 DCMR 700.3." It also assessed a $2,000 fine, classified as a "same violation within 60 days."[11] Notice K161639, in turn, was similar to the first notice of the failure to have a licensed solid waste collector (K161106) and, again, assessed a $500 fine for violating "21 DCMR 705.1." It was designated as another "same violation within 60 days."[12]

Petitioner signed answers to all four notices on May 2 (received by OAH on May 5), in each case checking the box "ADMIT WITH EXPLANATION (Hearing by Mail)." He explained in writing that the apartment building was undergoing renovations and had been "continuously unoccupied since July 1998," without need of a licensed trash collector. Petitioner acknowledged that the trash around the building contained construction materials, but he denied that it contained food wastes "hence, no food for rodents." Petitioner assured OAH that once the building was ready for occupancy, a licensed trash collector would be retained. According to each notice, by pleading and signing "Admit with Explanation," petitioner was admitting liability and seeking only a "reduction or suspension of the fine" by whatever "written explanation, affidavits, or other evidence explaining the circumstances surrounding the violation" he wished to submit.

The notices and responses were forwarded directly to an administrative law judge (ALJ),[13] who signed an order on December 17, 2009, holding petitioner lia-

7. The record also contained five photographs of the violations purportedly taken by the inspector on April 6, 2009 at 12:26 p.m.

8. 21 DCMR § 705.1 (1987) (requiring that "[e]ach premises or part of a premises where solid wastes are generated and where those wastes are not collected by the District shall be served by a licensed collector"). "Premises" are defined as "a building, together with any fences, walls, sheds, garages, or other accessory buildings appurtenant to that building, and the area of land surrounding the building and actually or by legal construction forming one enclosure in which the building is located." 21 DCMR § 799.1 (1996).

9. Several of the same photographs identified for notice K161105 were also submitted for notice K161106.

10. The certificate of service for notice K161639 indicates that the notice was served by certified mail but does not indicate any posting on the premises. See *supra* note 2.

11. The record contains two photographs of the violations, which appeared to be of the same premises as those for notices K161105 and K161106, although the trash looks different.

12. The same two photographs submitted for notice K161638 were also included for notice K1616139.

13. *See* D.C.Code § 2–1831.03(a)(6) (2001) (providing that "this chapter [governing 'Administrative Review of Civil Infractions'] shall apply to adjudicated cases under the jurisdiction of the following agencies ... (6) All adjudicated cases required to be heard pursuant to § 8–802 [enforcement of litter control regulations] and § 8–902 [enforcement of 'prohibition and penalties' against illegal dumping]").

ble for the noticed violations and ordering him to pay fines and· penalties totaling $7,500. The ALJ found that petitioner had admitted that:

> uncontainerized waste was stored on the Property for collection[,] including discarded appliances, numerous large plastic bags on the ground and on top of solid waste containers[,] and several white plastic bottles and other containers strewn over the Property. The solid waste provided food, harborage, or breeding places for insects or rodents, and created a nuisance or fire hazard.

She also noted that petitioner had admitted that the property "did not have a licensed trash collection service." The ALJ concluded that petitioner's admissions satisfactorily established that he had committed the violations.[14] The $7,500 in fines and penalties included "$2,000 in K161105, $500 in K161106, $2,000 in K161638 and $500 in K161639," as well as "a statutory penalty of $2,000 in K161105 and $500 in K161106" for petitioner's failure to file timely answers to the first (April 10) notices.

On January 22, 2010, petitioner timely filed both a petition for this court's review of the ALJ's order[15] and a motion for a stay of that order by the ALJ. On February 24, the ALJ denied the stay motion. On March 30, petitioner filed a motion for reconsideration of that denial—a motion which had not been decided at the time the record was transmitted to this court.[16]

## II.

■■■ " 'This court must affirm an OAH decision when (1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact.' " [17] "Although we accord appropriate weight to the interpretation of a statute by the agency which is charged with its enforcement, and which therefore ordinarily has specialized expertise, the OAH is vested with the responsibility for deciding administrative appeals involving a substantial number of different agencies." [18] Accordingly, we do not owe deference to the OAH interpretation of the Act, and thus we review statutory interpretations of the Act *de novo*.[19]

## III.

"Solid [w]aste [r]efuse" includes "putrescible and nonputrescible solid wastes, except body wastes, and including abandoned vehicles, food waste (garbage), rubbish, ashes, incinerator residue, street cleanings, tree debris, and solid market and industri-

---

14. The specifics of petitioners' admissions were not provided by him; rather, they were supplied by the inspector's report and accompanying photographs, which petitioner's "Admit with Explanation" was deemed to incorporate.

15. Although the order was signed on December 17, 2009, it was mailed on December 23, adding "5 additional days from the date of mailing" to the period of "30 days after notice is given" within which to file the petition for review. D.C.App. R. 15(a)(2).

16. Petitioner states in his brief that the motion for reconsideration "was not acted on by

either the OAH or [DPW]." Respondent has not refuted this claim, which was repeated by petitioner in his reply brief, filed on February 16, 2012.

17. *Prime v. District of Columbia Dep't of Pub. Works*, 955 A.2d 178, 182 (D.C.2008) (quoting *Rodriguez v. Filene's Basement, Inc.*, 905 A.2d 177, 180 (D.C.2006)).

18. *Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C.2008) (internal citations omitted).

19. *Id.*

al wastes."[20] The District of Columbia requires that "[a]ll solid wastes ... be stored and containerized for collection in a manner that will not provide food, harborage, or breeding places for insects or rodents, or create a nuisance or fire hazard."[21] A building or structure with four or more dwelling units is not entitled to District of Columbia solid waste collection service.[22] It must therefore be served by a licensed trash collector to remove solid wastes[23] and, for failure to comply, the owner will be subject to a fine for a "commercial," not "residential," violation.[24]

If an individual violates solid waste collection regulations, "each and every day of the violation shall constitute a separate offense."[25] A first violation of 21 DCMR § 700.3[26] carries with it a fine of $1,000, and a second violation within a 60-day period results in a fine of $2,000.[27] A first violation of 21 DCMR § 705.1[28] generates a fine of $500, and a second violation within a 60-day period mandates a $1,000 fine.[29] The notice of violation is *prima facie* evidence of the allegations it contains.[30] In addition, "[f]ailure to answer the Notice of Violation within the time prescribed on the Notice [14 days from the date of service] shall result in the imposition of an additional penalty equal to the amount of the original civil fine."[31] .

### IV.

Petitioner makes several arguments on appeal. He challenges the adequacy of the service of process, the sufficiency of the evidence against him, the claim of repeated violations within a sixty-day period, the close proximity of the two dates of alleged violations (which he calls "Double Jeopardy"), the amounts of the fines, and the assessment of statutory penalties for untimely responses. Respondent replies, to

20. 21 DCMR § 799.1. In addition, rubbish is defined as "nonputrescible solid wastes (including ashes) consisting of both combustible and non-combustible wastes, such as paper, cardboard, tin cans, yard rubbish, wood, glass, bedding, crockery, or litter of any kind." *Id.*

21. 21 DCMR § 700.3; see *supra* note 4.

22. 21 DCMR § 700.8(a).

23. 21 DCMR § 705.1; see *supra* note 8.

24. 24 DCMR § 1399.1 (1990).

25. 21 DCMR § 700.7.

26. See *supra* note 4.

27. 24 DCMR § 1380.2; see *supra* note 6.

28. See *supra* note 8.

29. 24 DCMR § 1380.2.

30. 24 DCMR § 1301.3 (1987).

31. 24 DCMR § 1306.7 (1990). No hearing in person was held in this matter. According to the regulations, a "respondent" (here, petitioner) who denies or admits with explanation the notice of violation is deemed to have requested a hearing. 24 DCMR § 1306.6. "If ... the presence of the issuing agent is not requested by either the respondent or the Department, an immediate hearing may be conducted by appearing at the location described on the Notice within the time prescribed on the Notice." 24 DCMR § 1307.1 (1987). If the presence of the issuing agent is requested, the hearing shall be scheduled for another date and time. 24 DCMR § 1307.2. The burden is on the responding property owner to "schedule a hearing within 14 calendar days after the date the [Department] issued the notice." D.C.Code § 8–804(e) (2001). The notice of violation received by a "respondent" indicates that if the respondent denies the charge, he or she "must appear for a hearing." However, the notice further states that if the respondent (here, petitioner) "admits with explanation," he is entitled to a hearing only by mail. In sum, although petitioner Williams was deemed to have requested a hearing, that did not permit him to appear personally before an ALJ; he was limited to a hearing by mail based on his written explanations.

the contrary, that the record contains substantial evidence permitting the ALJ to conclude that petitioner committed the violations, if only because he admitted liability in his responses to the notices; that petitioner submitted untimely responses to the first two notices, thereby justifying the penalties; and that petitioner has forfeited his remaining arguments because he failed to raise them before OAH (the ALJ).

## A.

Petitioner does not dispute that in signing all four notices of violation he checked the box "Admit with Explanation." He asserts, however, that the "ALJ arbitrarily split-out/separated the 'Admit' and 'With Explanation' portions of [his] answers, when the two parts were inextricably bound/joined." By this he means that he did not intend to admit anything beyond his two explanations (both dated May 2, 2009) covering all violations. The first explanation, directed at the solid waste violations (K161105 and K161638), shows, he says, that he admitted only "the existence of generic solid waste, when compared to liquid or gaseous waste; but, clearly not food or food related waste [in violation of] 21 DCMR 700.3 and 21 DCMR 705.1." In the second explanation (for K161106 and K161639), petitioner contends that he was not obliged to retain a "licensed waste

disposal contractor" because his apartment building was undergoing renovation and thus was vacant, making the requirement "grossly unreasonable" in the absence of tenants.

■ Contrary to petitioner's arguments, however, as explained above in Part I, there is no partial "Admit"; each notice he received expressly separated the "admission of liability" from the "written explanation, affidavits, or other evidence explaining the circumstances surrounding the violation." Each notice further advised that the explanation could not address liability—a non-appealable determination premised on the admission itself. The explanation, rather, was limited to justifying a "reduction or suspension of the fine." In sum, by checking four "Admit with Explanation" boxes and signing the notices of violation, petitioner is deemed to have admitted liability for the underlying violations and to have subscribed to the language on each that limits any relief from his explanation to "reduction or suspension of the fine." [32] Accordingly, he was precluded from contesting before the ALJ (and thus this court) the existence of the uncontainerized waste violations [33] or the findings that his property lacked a required waste-hauling arrangement.[34]

---

32. *See* 24 DCMR § 1306.3 ("An answer of 'Admit' shall constitute the respondent's acknowledgement and acceptance of liability for the condition(s) resulting in the issuance of a Notice of Violation."); *see generally Kovach v. District of Columbia*, 805 A.2d 957, 962 (D.C. 2002) (noting that appellant's failure to contest a traffic violation was an admission of liability).

33. See *supra* note 4.

34. See *supra* note 8. In any event, the evidence of record, enhanced by extensive photographs of the premises, appears to provide

substantial evidence for the ALJ's findings of solid waste violations—including the "generic solid wastes" he admitted. See *supra* note 20. Moreover, the presence or absence of tenants was irrelevant to the requirement of suitable containers for disposal of solid wastes, especially during a period of renovation that generates trash of various kinds regulated under the Act governing litter control. Finally, because petitioner's building has four units not served by D.C. trash collectors, all four notices properly described his defaults as "commercial violations." See *supra* note 22. Contrary to his apparent belief, therefore, petitioner's defaults were not subject to lesser

## B.

Petitioner's remaining contentions are directed at the level of fines and penalties, issues that his admissions of liability do not bar from administrative and appellate review.[35] He maintains that:

—"[T]here had been no earlier violation of either type" within sixty days of the first two violations alleged here.

—Contrary to the ALJ's finding that petitioner was "served" with notices of the first two (April 6) violations on April 10, petitioner did not find the envelope with the notices until April 18, a day after the inspector visited his premises and identified the second two (April 17) violations. This sequence, he argues, raises "Double Jeopardy concerns ... since [he] was charge[d] with the SAME violations within six (6) days of each other ... BEFORE [he] had even been notified or made aware of the first set of charges/violations."

—"[T]he amount of the fines ... [is] illegal."

—Petitioner "filed timely answers to all four (4) Notices of Violations," negating justification for the penalties imposed.

Basically, petitioner argues that (1) as to fines, there were no earlier violations that justified designating K161105 and K161106 as "same violations within 60 days," and thus generating a double fine for violation of K161105.[36] He then argues that (2) as to penalties, he filed timely answers to those first two notices, thereby precluding the penalties imposed for late-filing.[37] Although the first contention challenges admitted violations, there is an open question as to whether the admissions are limited to solid waste and trash hauling or must be said to encompass as well the additional charge of "same violation within 60 days." More specifically, in the words of the applicable regulation, is an "Admit"—that is, the "acceptance of liability for the *condition(s)* resulting in the issuance of a Notice of Violation"[38]—also an admission of "same violation within 60 days"? If not, then of course petitioner's admissions would not preclude a legal challenge to the double fine.

The answer to that question for this case is impacted by respondent's own actions. In its motion for leave to file a "revised" brief on appeal to this court, respondent virtually concedes the lack of evidentiary predicates for the "same violation" findings

fines as "residential" violations. *Compare* 24 DCMR § 1380.1 (residential violations) *with* 24 DCMR § 1380.2 (commercial violations).

35. *See* 24 DCMR § 1315.4 (1990) ("Where an answer of 'Admit with Explanation' was entered at a hearing, the scope of the appeal shall be limited to the validity and propriety of the sanctions imposed.").

36. Although K161106 was designated a "same violation within 60 days," it was not assigned a double fine. *See* 24 DCMR · § 1380.2.

37. Petitioner's remaining, "Double Jeopardy" contention, premised inaptly on language from the criminal law, is simply a contention that he should not be penalized twice for what he contends is a single violation. The

argument is derived from a contention in his motion for reconsideration (not yet ruled upon by the ALJ) that he was served with the second two Notices of Violation within six days of the first two notices, a brief sequence, he says, indicating that the second notices were duplicates of the first ones. Because the regulations provide that "each and every day of the violation shall constitute a separate offense," 21 DCMR § 700.7, *supra* note 25, and because the photographs for the second two notices show the same premises with trash that appears to differ from that in the photos accompanying the first two notices, petitioner's argument fails—unless rejuvenated by the ALJ when ruling, eventually, on reconsideration.

38. 24 DCMR § 1306.3 (emphasis added); see *supra* note 32.

for the first two notices. The motion acknowledges that OAH had "dismissed the[ ] two earlier notices," K160174 and K160175 (dated March 30, 2009), that had served as those predicates.[39] In fact, even the respondent's original brief acknowledged that those earlier notices "were not included as part of the OAH administrative record," implying that the ALJ had never seen them.[40] As a result, respondent informed this court in its motion for leave to file its revised brief that respondent DPW "will not rely on these two earlier notices" in defending this appeal.

We say that respondent "virtually" concedes the lack of evidentiary predicates for characterizing K161105 and K161106 as "same violations within 60 days" because respondent still stands its ground. Respondent maintains that petitioner's "admit with explanation," coupled with his failure to litigate the 60–day issue "to the OAH" "forfeit[ed]" any contention that K161105 and K161106 did not fall within 60 days of two other violations, warranting mandatory, stepped-up penalties.[41] As we shall see, in making this argument, respondent engages in a steep climb.

The administrative record before the ALJ consisted entirely of the four violation notices signed by petitioner, accompanied by photographs of petitioner's premises capturing the alleged violations, and petitioner's explanations. Absent was any documentary evidence of earlier violations. Petitioner's admission was limited to checking the "Admit with Explanation" box on each notice and signing the notice below that box. Higher up on each form, the inspector, after describing the violation, had checked "yes" in the box after the line "same violation within 60 days," and circled "60 days." The inspector also checked the box for "$2,000" in a line of fines beginning with "$75" and running beyond $2,000 to "OTHER." Nothing on the front or back side of the form suggests—except by attenuated implication—what legal (not merely discretionary) connection there was, if any, between the amount of the fine and the "60 days" box.

It may be reasonably clear, if not ineluctably so, that "same violation within 60 days" means two violations of the same kind within any period of sixty consecutive days. And the notices also may imply, if not obviously so, that the $2,000 fine would have been less without the "60 days" reference. But, that said, the notices remain ambiguous as to whether an "Admit" extends to (and thus resolves) the "same violation" issue, or whether instead an "Admit"—i.e., an "acceptance of liability for the condition(s) resulting in the issuance of a Notice of Violation"[42]—leaves open a challenge to the double fine as a matter of *law*, not merely of mitigation, on the ground that "condition(s)" refers only to the premises, not also to the number of violations.

■ Respondent argues that there is no ambiguity—that an "Admit" includes the "same violation" charge. We can be confident, says respondent—even without the earlier "dismissed" violations (K160174 and K160175) in the record—that petitioner understood clearly that his admission of

**39.** See *supra* note 5.

**40.** If those earlier notices had been in the record before the ALJ, presumably respondent would have said so and included them in the record on appeal for this court's review.

**41.** See *Sims v. District of Columbia*, 933 A.2d 305, 309–10 (D.C.2007) (holding that appellant waived argument that the Mayor had placed him in the Excepted Service without legal authority by failing to present that argument initially to Office of Employee Appeals).

**42.** 24 DCMR § 1306.3; see *supra* note 32.

liability included admission of earlier violations that would automatically increase the fines for the violations he was signing; thus, his challenge is precluded here. For three reasons, we lack that confidence about petitioner's understanding and reject the legal conclusion that, in admitting violations K161105 and K161106, petitioner has admitted "same violation[s] within 60 days" and is precluded, for that reason, from challenging the double fine.

*First,* each notice is ambiguous as to whether an "Admit" precludes or permits a legal challenge to a "same violation" charge; it is not clear that an admission as to the "conditions" of the premises includes an admission of an earlier "same violation."[43] But the proper interpretation of "Admit" is not dispositive. Other language in the notice of violation, allowing one who "Admit[s] with Explanation" to seek "reduction or suspension of the fine,"[44] trumps any reading of "Admit" that would embrace acceptance of a fine for "same violation within sixty (60) days."

*Second,* respondent conceded, candidly and commendably, that the earlier violations which petitioner supposedly had admitted had actually been dismissed-phantom predicates, we say, for the ALJ's ruling.[45]

*Third,* and finally, this court's jurisprudence, elaborated almost a quarter-century ago in our *Goodman* decision, recognizes that in "exceptional circumstances" we will address issues not raised before the administrative agency in order to avoid "manifest injustice."[46] We have set a high bar for acknowledging exceptional circumstances,[47] but we believe that such circumstances are present here, because (1) respondent admits there is no proper evidentiary basis for a conclusion that K161105 was a repeat violation, and (2) for the reasons already explained, petitioner cannot properly be understood to have admitted that K161105 was a repeat violation.

We agree with the *Sims* decision, on which respondent principally relies, that "[i]t is a principle of long standing that '[a]dministrative and judicial efficiency require all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review.' "[48] But *Sims* itself recognizes the *Goodman* exception,[49] which we think pertains here, especially because respondent itself acknowledges that the record, aside from petitioner's signatures on notices of violations, does not support its position. To hold petitioner to an admission that respondent itself cannot document beyond

**43.** *See Nelson v. District of Columbia Dep't of Emp't Servs.,* 530 A.2d 1193, 1195–96 (D.C. 1987) (remanding case where *"pro se* applicant for entitlement benefits has potentially been misled as to her appellate rights and may have received an inadequate opportunity to present her arguments to the agency" because "agency's notice [of appeals process] was ambiguous" (footnote omitted)).

**44.** See text *supra* accompanying note 32.

**45.** *See Hill v. District of Columbia Dep't of Emp't Servs.,* 717 A.2d 909, 912–13 (D.C. 1998) (remanding agency decision after employer conceded several new factual issues on appeal).

**46.** *Goodman v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1301 & n. 21 (D.C.1990); *accord District of Columbia Office of Tax & Revenue v. BAE Sys. Enter. Sys., Inc.,* 56 A.3d 477, 486 (D.C.2012).

**47.** See *supra* note 46.

**48.** *Sims,* 933 A.2d at 309 (quoting *Orius Telecomm., Inc. v. District of Columbia Dep't of Emp't Servs.,* 857 A.2d 1061, 1068 (D.C.2004)) (second alteration in original).

**49.** *Id.* at 309–10.

petitioner's own check of a box on an ambiguous notice of violation would be manifest injustice.[50] Thus, a double fine for violation K161105 is not warranted on this record.[51]

## C.

We turn, finally, to the ALJ's Final Order explaining the penalties imposed for petitioner's failure to answer the first two notices of violation, K161105 and K161106, "within the prescribed deadline of 19 days after service by mail (14 days pursuant to D.C. Official Code § 8–804(f), plus 5 days when service is by mail, pursuant to OAH Rule 2811.5)." According to the ALJ, the notices were served on April 10, 2009, and petitioner did not file his answers until May 5, six days late; thus, the ALJ imposed the mandatory penalty, equaling the fine for each notice, $2,000 for K161105 and $500 for K161106.[52]

Signed certificates of service for each notice are in the record showing that both had been served by "Certified Mail" on April 10, 2009, and that K161105 (but not K161106) had also been served on April 10, 2009 by "Conspicuous Posting on the Premises of the Violation." Those certificates, however, are not attached to the copies of the notices signed by petitioner on May 2, 2009, and received by OAH on May 5. Furthermore, it is not clear when the notices "served" by certified mail were actually sent and received (although per-

haps the five extra days allowed for mailing beyond the fourteen day deadline would moot any such concern if certified mail went out on April 10). Finally, there is nothing of record indicating whether the service of certified mail included—or even was intended (or required) to include—a return receipt verifying delivery and receipt.

In any event, petitioner, in his motion for reconsideration, challenges service of process for both K161105 and K161106, contending that "4/18/09 represents the very first contact" with respondent in this matter, and thus that his answers to the first two notices were well within the nineteen days allowed. More specifically, he says:

> The two notices were found by [petitioner] in an oversized envelope, on the front deck of the premises on 4/18/09, and not served by mail or otherwise on [petitioner] on 4/10/09, as alleged.... [T]he envelope was not delivered by the Postal Service/mail and/or signed for by [petitioner], even though certain artifacts of certified mail were found on the envelope.... The envelope had no postal service stamps or postage payment markings of any type.

■ We have no idea what actually occurred in serving these two notices on petitioner. However, as there is no evidence of record that the ALJ has ruled on

---

50. *See Moore v. District of Columbia Dep't of Emp't Servs.*, 813 A.2d 227, 229 & n. 5 (D.C. 2002) (internal citation and quotation marks omitted) (permitting consideration of new argument on appeal that agency had relied on "a material misconception of the law," because "the interests of justice counsel us not to ignore the plain error that infects the [agency's decision]").

51. Although petitioner failed to contest the legality of the double fine for K161105 in his initial explanation to OAH, he did so in his

*pro se* motion for reconsideration (on which the ALJ has not ruled). Although a motion for reconsideration, unless granted, will ordinarily not erase a party's waiver of an argument not presented to the adjudicator before entry of the final order on the merits, petitioner's timely motion here, under the circumstances, adds to the equitable grounds for rejecting the double fine to avoid manifest injustice.

52. *See* D.C.Code § 8–804(f) (2001).

petitioner's motion for reconsideration challenging service of process, it is appropriate for the ALJ, not this court, to rule initially on petitioner's contentions in that motion. If he is dissatisfied with that ruling, he can seek our review of it.

### D.

We, therefore, must reverse as to the first two violations at issue here, K161105 and K161106, for the record does not support denominating them "same violation[s] within 60 days." Accordingly, the maximum fine for violation K161105—as a single violation—is $1,000. Although violation K161106 is likewise described improperly as a "same violation within 60 days," the fine for it was limited to a single violation; thus, petitioner was not prejudiced by the $500 fine he received.[53] We are satisfied, however, that the $2,000 and $500 fines, respectively, for violations K161638 and K161639 are "same violation[s] within 60 days," supported by substantial evidence of record, as they occurred within sixty days of violations K161105 and K161106.

Now to the penalties. Because service of process is duly challenged by petitioner's motion for reconsideration still pending before the ALJ, the question remains: whether petitioner did, or did not, answer the notices of violations K161105 and K161106 within the deadline imposed by the regulations. Until the ALJ revisits the question, it will not be clear whether penalties assessed for those violations are warranted. We can say definitively, however, that even if a penalty is warranted for the K161105 violation, it would not exceed $1,000, given our conclusion that

that violation itself no longer can be considered a "same violation within 60 days."

\* \* \* \* \* \*

We, therefore, reverse in part and remand the case for further proceedings, without limitation on OAH to reevaluate the situation in accordance with law, consistent with this opinion.

*So ordered.*

---

**53.** In addition, the fine petitioner received for K161639 was also for $500. Therefore, petitioner was not fined the scheduled $2,000 for

a third violation within a 60 day period. 24 DCMR § 1380.2.