*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 13-AA-233 & 13-AA-389

DISTRICT OF COLUMBIA DEPARTMENT OF THE ENVIRONMENT, PETITIONER,

V.

C & M FRUIT & PRODUCE CO., INC., RESPONDENT.

On Petition for Review of a Decision
of the District of Columbia Office of Administrative Hearings
(DDOE-A500031-12)

(Hon. Audrey J. Jenkins, Administrative Law Judge)

(Argued October 16, 2014     Decided August 20, 2015)

*Carl J. Schifferle*, Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia at the time the briefs were filed, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for petitioner.

*David A. Greenbaum*, with whom *Craig M. Schwartz* was on the brief, for respondent.

Before BECKWITH and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

BECKWITH, *Associate Judge*: The District of Columbia Department of the Environment (DDOE) petitions for review of an order finding respondent C & M Fruit and Produce Co., Inc. (C&M) not liable for a civil infraction. DDOE argues

that the Administrative Law Judge (ALJ) erred by "sua sponte amend[ing] C&M's answer from 'admit with explanation' to 'deny'" and by finding C&M not liable without giving DDOE an opportunity to present its case. We conclude that the pertinent regulation and statute governing administrative review of civil infractions—specifically, 1 DCMR § 2804.11 (2014) and D.C. Code § 2-1802.03 (c) (2012 Repl.)—not only permitted but required the ALJ to find C&M not liable despite its plea of "admit with explanation" where the ALJ determined that the evidence did not establish an infraction and where the record shows that DDOE received notice and an opportunity to present its case. We affirm the ALJ's order.

**I.**

On August 9, 2012, the D.C. Department of the Environment cited C & M Fruit & Produce Co. for idling a motor vehicle engine longer than three minutes in violation of 20 DCMR § 900.1 (2010).[1] The vehicle was a refrigerated truck

---

[1] "No person owning, operating, or having control over the engine of a gasoline or diesel powered motor vehicle on public or private space, including the engine of a public vehicles [sic] for hire, buses with a seating capacity of twelve (12) or more persons, and school buses or any vehicle transporting students, shall allow that engine to idle for more than three (3) minutes while the motor vehicle is parked, stopped, or standing, including for the purpose of operating air conditioning equipment in those vehicles, except as follows:

(a) To operate private passenger vehicles;

(continued…)

designed to transport food in compliance with federal regulations. C&M uses two types of refrigerated trucks: one in which the engine must be running for the refrigeration unit to run and one in which the refrigeration unit runs independently of the truck. This particular truck had an independent refrigeration unit, so the engine did not need to idle to keep the refrigerator running.

C&M answered the infraction with a plea of "deny,"[2] stating in writing that "it was not the enging [sic] that was running, it was the refrigeration unit that was running. . . . It is very understandable that someone would mistake the sound of the refrigeration unit running as the truck engine. However the truck was not idling[;] it was turned off." C&M's chief executive officer Michael Davis represented his company at a hearing before an ALJ. Although C&M had already

---

(…continued)

    (b) To operate power takeoff equipment, including dumping, cement mixers, refrigeration systems, content delivery, winches, or shredders; or

    (c) To idle the engine for no more than five (5) minutes to operate heating equipment when the ambient air temperature is thirty-two degrees Fahrenheit (32°F) or below."

20 DCMR § 900.1 (2010).

[2] "In answer to a notice of infraction a respondent may: (1) Admit the infraction; (2) Admit the infraction with an explanation which the hearing examiner may take into account in the imposition of a sanction for the infraction; or (3) Deny commission of the infraction." D.C. Code § 2-1802.02 (a) (2012 Repl.).

pled "deny," the ALJ began by explaining the three plea options to Mr. Davis and asking him whether he would like to change his plea. Mr. Davis responded that he would change his plea to "admit with an explanation, I guess, that option." Mr. Davis testified that he was not present when DDOE issued its citation and had "no way of knowing" if the truck was running, but that the driver "ha[d] sworn" that he removed the keys from the ignition and that the company had a policy requiring drivers to take the keys with them when leaving that type of truck. He also said it is difficult to tell from noise alone "when the truck is running and when it's just the [refrigeration] unit running." But Mr. Davis reiterated that he did not know whether the truck was idling, and closed by asking the ALJ "for a little bit of leniency and understanding."

Neil Williams, the inspector who issued the citation, represented DDOE at the hearing. He testified that he had written "hundreds of citations, undeniably, hundreds of citations where [he had] to observe the [refrigeration unit] to distinguish whether it's the [refrigerator] or the engine" that was running. In this case, he said, he observed the engine running without a driver in the truck. Mr. Williams then "commend[ed] the CEO for . . . admitting with an explanation, since he was not there to observe [it]," and he "le[ft] it in the discretion of the Court[] to make the final decision."

The ALJ issued a written decision on December 10, 2012. Because of C&M's admit-with-explanation plea, the ALJ ruled that C&M was liable, but she suspended the fine because she found, as a factual matter, that "Respondent was not idling the engine, but was running the truck's refrigeration unit" and that "[t]his constitutes a complete defense to the charge."

DDOE moved for reconsideration, arguing that the ALJ's "finding of fact that Respondent was not idling its engine [was] not supported by the evidence" and was inconsistent with its ruling that C&M was liable. The ALJ then amended her initial order to state that C&M was not liable, and instead of relying on a factual finding that the truck was not running, she concluded that "[w]hether Respondent was idling the truck engine or refrigeration unit is of no consequence as Respondent's truck was exactly the type of vehicle allowed by 20 DCMR 900.1(b)," which, among other things, provides an exception to the no-idling rule for vehicles "operat[ing] power takeoff equipment, including . . . refrigeration systems." 20 DCMR § 900.1 (b). The judge further stated that the government "did not dispute that Respondent operated a refrigerated truck despite having an opportunity to do so. As such, a finding that Respondent's truck was refrigerated, thus falling under 20 DCMR 900.1(b), is well founded based on the evidence on record."

DDOE again moved for reconsideration, arguing that the ALJ's interpretation of the regulation was erroneous.  DDOE argued that the § 900.1 (b) exception only applies to refrigeration units that "cannot operate unless the engine is running," and said its interpretation of the regulation was entitled to deference. DDOE argued that, given the lack of dispute that C&M's truck had an independently run refrigeration unit, the ALJ erred as a matter of law by finding that C&M's truck fell within the § 900.1 (b) exception.  The ALJ denied reconsideration, avoiding DDOE's statutory interpretation argument and reiterating her initial factual finding that "the refrigeration unit was running while the engine to the truck was not."  DDOE filed a petition for review in this court.

## II.

DDOE asks us to reverse the ALJ's ruling and remand for a new hearing because the ALJ  "erroneously disregarded C&M's plea of admit with explanation and made a factual determination that it was not liable without providing DDOE an opportunity to prove its case."  DDOE first claims that an admit-with-explanation plea "remov[es] liability as an issue and limit[s] the hearing to the issue of the appropriate sanction."  DDOE points to D.C. Code § 2-1802.02 (a) (Repl. 2012), which states:  "In answer to a notice of infraction a respondent may: . . . (2) Admit the infraction with an explanation which the hearing examiner may take into

account in the imposition of a sanction for the infraction . . . ." DDOE argues that because the statute explicitly allows the ALJ to use an explanation to determine sanctions, it must not allow the ALJ to use an explanation for any other purpose, such as to negate liability—an application of the canon *expressio unius est exclusio alterius*. DDOE also notes that the ALJ told Mr. Davis that an admit-with-explanation plea "means that you acknowledge that you committed the violation, but you have some explanation that you'd like me to consider in deciding to reduce or suspend the fine all together."

DDOE's argument is undercut, however, by the Office of Administrative Hearings Rules of Practice and Procedure, which expressly provide that "[i]n an Admit with Explanation case, the Administrative Law Judge shall dismiss the Notice if he or she determines that the Respondent did not commit or is not responsible for the violation charged." 1 DCMR § 2804.11 (2014).[3] This

---

[3] DDOE argues that we cannot consider this regulation because the ALJ "did not rely on this regulation in this case . . . and thus it is not a proper basis for affirmance." *See, e.g.*, *Newell-Brinkley v. Walton*, 84 A.3d 53, 59 (D.C. 2014) ("This court generally cannot uphold an agency decision on grounds other than those actually relied upon by the agency.") (citation and internal quotation marks omitted). But just as a judge need not explicitly cite the provisions of law that authorize her to perform basic judicial tasks—for example, to hold a hearing, make factual findings, or issue an order—the ALJ here did not have to cite 1 DCMR § 2804.11 to exercise the authority it grants her to dismiss the notice of infraction. The rule to which DDOE refers prevents this court from affirming an ALJ decision based on arguments or rationales that the ALJ did not adopt. *See Point Park Univ.*

(continued…)

regulation requires the ALJ to find a respondent not liable when its explanation negates its liability. DDOE argues that the regulation cannot conflict with a valid statute, *see Thompson v. District of Columbia*, 978 A.2d 1240, 1243-44 (D.C. 2009); *Texas v. EPA*, 726 F.3d 180, 195 (D.C. Cir. 2013), but we will uphold an agency regulation when the statute is ambiguous and the regulation is reasonable. *See Barnhart v. Walton*, 535 U.S. 212, 224 (2002). As noted above, this interpretation of D.C. Code § 2-1802.02 (a)(2) relies on the *expressio unius* canon, which is "an especially feeble helper in an administrative setting, where [the legislature] is presumed to have left to reasonable agency discretion questions that it has not directly resolved." *National Ass'n of Mfrs. v. SEC*, 748 F.3d 359, 367 (D.C. Cir. 2014), *overruled in part on other grounds by American Meat Inst. v. USDA*, 760 F. 3d 18 (D.C. Cir. 2014) (quoting *Cheney R. Co. v. ICC*, 902 F.2d 66, 69 (D.C. Cir. 1990)). We see no direct conflict between the statute and regulation that requires us to deem the latter invalid.

Moreover, D.C. Code § 2-1802.03 provides that "[t]he Mayor shall bear the burden of establishing an infraction by a preponderance of the evidence" and

(…continued)
*v. NLRB*, 457 F.3d 42, 50 (D.C. Cir. 2006) ("Nor can our Court fill in critical gaps in the Board's reasoning. We can only look to the Board's stated rationale. We cannot sustain its actions on some other basis the Board did not mention."). That is not the case here.

"[w]here the Mayor has not established the infraction, the administrative law judge or attorney examiner shall enter an order dismissing the notice of infraction." D.C. Code § 2-1802.03 (a), (c) (2012 Repl.). Like 1 DCMR § 2804.11, this provision gives the ALJ the authority—indeed the duty—to dismiss an infraction when the evidence shows that the respondent is not liable. As this statute is in tension with DDOE's narrow interpretation of D.C. Code § 2-1802.02 (a), we decline to read D.C. Code § 2-1802.02 (a) to limit the use of an explanation solely to determining the appropriate sanction, and we conclude that the ALJ properly dismissed the infraction, notwithstanding C&M's admit plea, where C&M's explanation convinced her that C&M was not liable for the infraction.[4]

## III.

DDOE also argues that even if the ALJ could use C&M's explanation to negate liability, the ALJ's order must be reversed because DDOE was not on

---

[4] DDOE's reliance on *Williams v. District of Columbia Dep't of Pub. Works*, 65 A.3d 100 (D.C. 2013), is misplaced. The ALJ in *Williams* "concluded that petitioner's admissions satisfactorily established that he had committed the violations," and thus we held that the petitioner was "precluded from contesting" liability any further. *Id.* at 104, 106. But here, the ALJ did not find that the admission "satisfactorily established" C&M's liability because other evidence she credited suggested that the truck was not idling. Nothing we said in *Williams*—a case that did not address 1 DCMR § 2804.11—precludes the ALJ from finding that an admission with explanation is insufficient to establish liability in circumstances where the explanation itself negates liability.

notice that liability was a contested issue and it did not have the opportunity to prove that the truck engine was running. We agree that because an admission is generally sufficient to prove liability, the government may be unaware that it must present evidence of liability to meet its burden when the respondent submits an admit-with-explanation plea. Therefore, the ALJ could find that C&M was not liable only if the government was on notice that C&M's explanation might negate liability and it was provided with an opportunity to "present evidence and argument with respect" to liability.[5] *See* D.C. Code § 2-509 (a) (2012 Repl.) (made applicable to civil infractions by § 2-1802.03 (a)).

On the facts of this case, however, we conclude that DDOE had sufficient notice that liability was disputed despite C&M's admit-with-explanation plea and that DDOE was given sufficient opportunity to present its case to the ALJ. At the outset, DDOE knew before the hearing that liability was contested and which basic facts were in dispute because C&M submitted a denial letter explaining that "it was not the enging [sic] that was running, it was the refrigeration unit that was running." The ALJ's hearing scheduling order stated that C&M denied the

---

[5] Otherwise, the government points out, it would essentially be required to treat every admit-with-explanation plea as a denial and be prepared to present a complete case, undermining the purpose of the plea system to streamline the disposition of civil infractions.

violation and instructed that both parties shall "be prepared to proceed with an evidentiary hearing on the merits and shall have available to them at that time all witnesses and evidence they may offer." DDOE inspector Neil Williams therefore appeared at the ALJ hearing prepared to establish C&M's liability—that is, that it was the truck engine and not the refrigerator that was running—to the best of his ability.

In addition, even though C&M changed its plea to admit with explanation at the beginning of the hearing, Mr. Davis's testimony did not concede liability as a factual matter. Mr. Davis admitted with explanation solely because he lacked firsthand knowledge whether the truck was running, stating that he had "no case to deny or prove that it wasn't running." Yet Mr. Davis also indicated that to the best of his knowledge the truck was *not* running. He testified that C&M's "policy is drivers take the keys with them, when they leave the truck, unless it's one of the trucks"—unlike the truck here—in which the engine powers the refrigeration unit.[6] "When [C&M] got the infraction," Mr. Davis testified, "the driver ha[d] sworn that he had the keys out of the truck," adding that "these units are very large and loud

---

[6] This testimony echoed C&M's statement in its denial letter that "[i]t is company policy to turn the truck engine off and remove the keys, but to leave the [refrigeration] unit running to maintain the tempreture [sic] required by the Health Department to keep the perisable [sic] contents of the truck fresh."

and it's hard to tell[] when the truck is running and when it's just the [refrigeration] unit running." So while Mr. Davis may have admitted the infraction as a legal matter, he did not admit that the truck engine was running as a factual matter. Instead, he presented circumstantial evidence to the contrary that put DDOE on notice that liability had not been conclusively established.

Finally, Mr. Williams's testimony for DDOE demonstrated that he knew the ALJ might credit Mr. Davis's circumstantial evidence that the engine was not running. Mr. Williams began by rebutting Mr. Davis's assertion that it is difficult to distinguish between the refrigeration unit and the engine with testimony about his extensive experience doing exactly that when issuing "hundreds" of citations. Mr. Williams then attempted to discredit the hearsay statement that the keys were not in the ignition, testifying that "I did observe the front of the truck. . . . [T]he engine was running on the truck, and there was no driver in the truck. I looked for the driver around in the store. I presumed that he did go into the farmer's market area." And while Mr. Williams "commend[ed] the CEO for . . . admitting with an explanation, since he was not there to observe [it]," he closed by stating, "I leave it in the discretion of the Court[] to make the final decision."

Considering Mr. Williams's attempts to rebut C&M's explanation, those parting words indicate that Mr. Williams understood that the ALJ would be determining C&M's liability notwithstanding the admit-with-explanation plea.

Contrary to DDOE's assertion on appeal that "Mr. Williams did not present a full case," Mr. Williams essentially stated that he had nothing more to say—he rested his case and left a final decision to the ALJ. DDOE claims that given the opportunity, Mr. Williams would have "detail[ed] his specific observations and his own substantial experience as an inspector in enforcing the anti-idling law," but as noted in the preceding paragraph, Mr. Williams did exactly that. For all these reasons, DDOE had sufficient notice and opportunity to "present evidence and argument" regarding C&M's liability for the infraction. D.C. Code § 2-509 (a).[7]

## IV.

In sum, when C&M offered an admit-with-explanation plea but the explanation persuaded the ALJ that the government had not established an infraction, the ALJ was required under 1 DCMR § 2804.11 to find C&M not liable, as long as DDOE had notice and an opportunity to present evidence regarding liability. On this record, where the DDOE investigator was prepared to and did present his full case despite C&M's decision to change its plea from deny to admit

---

[7] DDOE further argues that Mr. Williams was entitled to cross-examine Mr. Davis. We agree, but the record contains no indication that Mr. Williams was denied this opportunity. Mr. Williams chose to rebut the driver's hearsay statement with his own testimony, but he did not seek to cross-examine Mr. Davis before he rested his case and "le[ft] it in the discretion of the Court[] to make the final decision."

with explanation, and where the investigator's statements indicated that he expected the ALJ to determine liability based on the hearing testimony, DDOE had sufficient notice and opportunity to prove its case.

The ALJ's order is hereby

*Affirmed.*