*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CV-1001

HAROLD DARGAN, APPELLANT,

V.

DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2023-CAB-007818)

(Jonathan H. Pittman, *Judge*)

(Argued February 11, 2026    Decided April 17, 2026[*])

*Frederic W. Schwartz, Jr.* for appellant.

*Tessa Gellerson*, Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl Schifferle*, Deputy Solicitor General, were on the brief, for appellees.

Before MCLEESE, DEAHL, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: The District of Columbia Fire and Emergency

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of a motion to publish filed by appellee District of Columbia Fire and Emergency Medical Services Department.

Medical Services Department (FEMS) terminated appellant Harold Dargan in 2012 because he failed to maintain the necessary certification required of all emergency medical services providers in the District. Mr. Dargan timely challenged his termination in 2013, appealing to the D.C. Office of Employee Appeals (OEA), which affirmed his termination in 2015. The Superior Court affirmed this decision in 2017, and this court vacated and remanded in 2019. On remand, the OEA ultimately affirmed Mr. Dargan's termination in 2023, as did the Superior Court in 2024. Mr. Dargan has again appealed, arguing that his termination was improper because he was denied procedural due process and he was not given timely notice of his termination as required under D.C. Code § 5-1031(a). We affirm.

## I.    Background

### A.    Factual Background

In 2011, Mr. Dargan worked for FEMS as a Basic Paramedic. Pursuant to District policy, individuals must be certified by the D.C. Department of Health (DOH) and the National Registry of EMTs (NREMT) to provide emergency medical services. During the relevant time, the District recognized four levels of EMT certification:  (1) EMT-Basic;  (2) EMT-Advanced;  (3) EMT-Intermediate  (also referred to as EMT-I/99); and (4) EMT-Paramedic. Each certification qualified providers to engage in a different scope of practice: EMT-Basic and EMT-Advanced

providers were qualified to administer only basic life support services, while EMT-Intermediate and EMT-Paramedic providers were qualified to administer advanced life support services, including intubating, administering medications, starting IVs, and shocking the heart. Prior to his termination, Mr. Dargan was certified as an EMT-Intermediate.

On June 14, 2011, Mr. Dargan and his unit responded to a call regarding an unconscious woman. Mr. Dargan was unable to resuscitate her and she died. According to FEMS, Mr. Dargan "failed in his paramedic duties" because he "deviated from standard practice" in his resuscitation effort by neglecting to "adequately prepare all necessary equipment" and leaving the patient's "airway unattended" while retrieving additional equipment.

Mr. Dargan was immediately removed from the field and reassigned to the FEMS's training academy. FEMS placed him on a "Critical Remediation Action Plan," which established a "checklist" that Mr. Dargan had to complete to ensure that he had the requisite "knowledge, skills, and abilities to take care of patients" at his current certification level. Over the course of six months, Mr. Dargan underwent a remediation process that involved classroom education, assessments, and field evaluations. As part of this process, FEMS Medical Director Dr. David Miramontes

twice assessed Mr. Dargan's skill level for the EMT-Intermediate level via several practical skills exams.

Following the first examination on February 2, 2012, Dr. Miramontes determined that Mr. Dargan's performance was inadequate and Mr. Dargan returned to the training academy. Dr. Miramontes reexamined Mr. Dargan on February 14 and again concluded that his performance was inadequate because he failed to perform a cardiac life support scenario safely. That same day, Dr. Miramontes wrote to DOH requesting a "downgrade" of Mr. Dargan's certification to a basic life support level, explaining that Mr. Dargan's skills "were not to an acceptable standard" and that he consequently could not authorize recertification at the EMT-Intermediate level.

After both assessments, Dr. Miramontes told Mr. Dargan that he would no longer sponsor his certification at the EMT-Intermediate level (which permits provision of advanced life support) but offered to sponsor him at the EMT-Advanced level (which permits provision of only basic life support). Mr. Dargan never applied for an EMT-Advanced certification. Instead, on May 30, 2012, Mr. Dargan submitted his application for DOH recertification as an EMT-Intermediate to Dr. Miramontes for his signature. Dr. Miramontes did not sign Mr. Dargan's application and did not forward it to DOH for processing. On June 25, 2012, Dr. Miramontes

sent a second note to DOH requesting that Mr. Dargan's EMT-Intermediate certification be revoked, explaining that because Mr. Dargan had been found "incompetent despite retraining," Dr. Miramontes could not allow him to practice under his license and thus would not sponsor him "at the [advanced life support] scope of practice." On June 30, Mr. Dargan's DOH certification expired.

On October 31, FEMS sent Mr. Dargan a fifteen-day advance written notice proposing to terminate him for failing to maintain his DOH certification. Specifically, the notice charged him with violating Bulletin No. 83, FEMS's policy detailing the training and certification standards for emergency medical services personnel, by failing to maintain both a NREMT certification and a DOH certification and informed him of his right to an administrative hearing review by a hearing officer. Mr. Dargan submitted a written response to the hearing officer and, on April 5, 2013, received a written decision finding that FEMS's proposal to terminate him was supported by a preponderance of the evidence and the penalty of termination was reasonable, and recommending that he be removed from his position. On April 24, FEMS Chief Kenneth B. Ellerbe issued a Notice of Final Decision sustaining Mr. Dargan's removal and notifying him that he would be terminated from his position on May 3, 2013.

### B.    Procedural Background

Mr. Dargan appealed to the OEA, challenging his termination as untimely and claiming that FEMS violated his due process rights by terminating him "for an act over which he had no control" (i.e., Dr. Miramontes's refusal to sponsor his DOH recertification application) and denying him the procedural protections afforded to him by Bulletin No. 83. The OEA upheld Mr. Dargan's termination and concluded that FEMS (1) complied with the ninety-day time limit for commencing a corrective or adverse action against an employee under D.C. Code § 5-1031(a) and (2) removed Mr. Dargan from service "in accordance with applicable law, rule, or regulation," which the OEA identified as encompassing the certification testing requirements of Bulletin No. 83.

Mr. Dargan sought review of that decision in the Superior Court, reiterating both his timeliness and due process arguments. The Superior Court concluded that the OEA's finding that FEMS's charges were timely was supported by substantial record evidence and rejected Mr. Dargan's contention that his due process rights were violated because the OEA's interpretation of Bulletin No. 83 was not arbitrary or capricious. Mr. Dargan again appealed.

On December 20, 2019, this Court vacated the OEA's decision, stating that the procedures set forth in Bulletin No. 83 "by their plain language apply only to

[NREMT] certification, not [DOH] certification" and that it was "unclear why such testing would be relevant to this case" as Mr. Dargan was terminated solely for failing to maintain his DOH certification. We remanded the case for the OEA "to determine (1) what procedures, if any, should have been followed to deny Mr. Dargan DOH recertification before terminating [him] for not having a current DOH certification, and (2) whether these procedures were followed in Mr. Dargan's case." As relevant here, we concluded that "the answer to these questions could impact whether Mr. Dargan was given proper notice of an adverse action under D.C. Code § 5-1031," but we agreed that "if FEMS's notice obligation was not triggered until the date Mr. Dargan's DOH certification lapsed, then FEMS's notification was timely under the statute."

Following an evidentiary hearing, the OEA issued its initial decision on remand upholding Mr. Dargan's termination on March 4, 2022. Mr. Dargan petitioned the Superior Court for reconsideration and, because the OEA had failed to "explain why or how the testing procedures of Bulletin No. 83 appl[ied] to [the DOH recertification process]," FEMS moved to remand the case back to the OEA to comply with this court's "prior directive." The Superior Court agreed with FEMS and remanded the case.

On remand, the OEA addressed five issues: (1) whether a NREMT certification is relevant for a DOH recertification; (2) whether Bulletin No. 83's requirements regarding NREMT certification apply to DOH recertification; (3) what the DOH recertification process is for an EMT-Intermediate who no longer has a current DOH certification; (4) whether the DOH recertification process was followed before Mr. Dargan's termination; and (5) if the DOH recertification process was followed, whether Mr. Dargan's termination should be upheld. Because the parties generally agreed on the first three issues, only the last two are relevant here.

Regarding the fourth issue, Mr. Dargan argued that the recertification process was not followed because Dr. Miramontes refused to sign the required attestation for his application and never submitted that application to DOH. FEMS argued that Dr. Miramontes's decision not to sign Mr. Dargan's application was discretionary and not arbitrary because it was based on his careful assessment of Mr. Dargan's skill level following significant remediation efforts. The OEA agreed with FEMS that, under D.C. Code § 5-404.01(e)(1), Dr. Miramontes acted within his discretion in deciding not to sign Mr. Dargan's application and that because his decision was based on his "real-time observation of [Mr. Dargan] during the practice skills exams and his impressions of [Mr. Dargan's] performance," it was not arbitrary. The OEA further found that no legal authority required that any action be taken before Dr.

Miramontes could decide to withdraw his support for Mr. Dargan's DOH recertification as an EMT-Intermediate, nor was there any "law, regulation, or rule obligating the Medical Director" to forward incomplete applications to DOH.

Regarding the fifth issue, FEMS contended that Mr. Dargan's failure to maintain his DOH certification constituted cause for his termination and that advance notice was timely issued within ninety days of the expiration of his certification. Disagreeing, Mr. Dargan repeated his assertion that his termination was untimely because FEMS failed to initiate it within ninety days of when it knew or should have known that his certification would expire. The OEA upheld Mr. Dargan's termination because there was no legal authority requiring that any specific action be taken before Dr. Miramontes could decide to withdraw his sponsorship of Mr. Dargan's certification as an EMT-Intermediate or requiring FEMS to forward incomplete or unsigned applications to DOH, and therefore the termination was timely.

Mr. Dargan again appealed to the Superior Court. The Superior Court upheld the OEA's second decision on remand, concluding that the OEA's findings were supported by substantial evidence and complied with this court's "directive to determine whether FEMS (1) complied with the [ninety]-day time limit for commencing a corrective or adverse action against an employee under D.C. Code

§ 5-1031(a) and (2) terminated [Mr. Dargan] from service in accordance with applicable law, rule, or regulation including [B]ulletin No. 83's certification testing requirements." As to timeliness, the Superior Court reaffirmed that the act constituting cause "is the expiration of [Mr. Dargan's] DOH certification on June 30, 2012," and rejected Mr. Dargan's argument that the ninety-day period "began *before*" this. The court reasoned that the plain language of Section 5-1031(a) "does not contemplate that the [ninety]-day period would begin when the 'act or occurrence' merely starts to be anticipated." As to due process, the court found that there was substantial evidence in the record supporting the OEA's finding that Mr. Dargan received additional training after failing his initial skills assessment with Dr. Miramontes on February 2. The court underscored that Mr. Dargan had failed to "set forth any legal authority that would have required FEMS to provide him additional training during this period." Finally, the court declined to consider evidence that the OEA had excluded from its hearing on remand, noting that, even if consideration of the evidence was proper, "it is unclear how those statements support [Mr. Dargan's] conclusion that he was not offered adequate training."

This appeal followed.

## II.  Analysis

"We review agency decisions on appeal from the Superior Court the same way we review administrative appeals that come to us directly." *Cofield v. D.C. Off. of Emp. Appeals*, 295 A.3d 1184, 1190 (D.C. 2023) (quoting *Dupree v. D.C. Dep't of Corr.*, 132 A.3d 150, 154 (D.C. 2016)). Confined "strictly to the administrative record," we "must affirm the OEA's decision so long as it is supported by substantial evidence . . . and otherwise in accordance with law." *Id.* To be upheld, "an administrative agency decision must state findings of fact on each material, contested factual issue; those findings must be supported by substantial evidence in the agency record; and the agency's conclusions of law must follow rationally from its findings." *Id.* (quoting *Murchison v. D.C. Dep't of Pub. Works*, 813 A.2d 203, 205 (D.C. 2002)). "Questions of law, including questions regarding the interpretation of a statute or regulation, are reviewed *de novo*." *Id.* (quoting *Dupree*, 132 A.3d at 154).[1]

---

[1] The Supreme Court in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), cast some doubt on our longstanding precedent calling for deference to an agency's reasonable interpretation of a statute that it administers. Because we agree with the OEA's interpretation of Section 5-1031(a) even without giving it deference, we bypass this issue here. *See Lane v. D.C. Dep't of Hous. & Cmty. Dev.*, 320 A.3d 1044, 1047 & n.1 (D.C. 2024).

## A. Due Process

The first issue Mr. Dargan raises on appeal is whether he was denied procedural due process—under the U.S. Constitution and District law—when he was terminated by FEMS. Mr. Dargan bases his argument on the following three points: (1) he did not receive the full extent of testing and training provided for in Bulletin No. 83; (2) he had no control over Dr. Miramontes's withdrawal of his EMT-Intermediate sponsorship, which resulted in his DOH recertification application being incomplete and denied; and (3) the OEA improperly excluded the testimony of one of his witnesses.

FEMS contends that Mr. Dargan forfeited his federal constitutional due process argument because he failed to preserve it before the OEA and did not develop it on appeal. Assuming that the argument was preserved, FEMS argues that Mr. Dargan has not identified a protected property interest in his continued employment following the lapse in his DOH certification, but, assuming there is such an interest, Mr. Dargan was afforded the requisite due process because he received notice of his termination, took the opportunity to respond to that notice, and had several opportunities to challenge his termination before the OEA, in Superior Court, and in this court. As to District law, FEMS asserts that Mr. Dargan received the required remediation opportunities and that, as Mr. Dargan has conceded, Dr.

Miramontes had an "absolute right—short of discriminatory animus" to decide whether to continue to sponsor Mr. Dargan at the EMT-Intermediate level and was not required by law to take any procedural action before withdrawing that sponsorship.

Both of Mr. Dargan's due process arguments are unavailing.

### 1.    Constitutional Due Process

We decline to decide whether Mr. Dargan forfeited his constitutional due process argument, concluding that, regardless, it fails on the merits. To satisfy Mr. Dargan's constitutional due process rights, FEMS was required to timely provide him with advance notice of his termination and to present him with an opportunity to respond to that notice. *See Walker v. D.C. Off. of Emp. Appeals*, 310 A.3d 597, 603-06 (D.C. 2024) (holding that employee was afforded sufficient due process when given an opportunity to "present [her] side of the story before she was removed from office"); *Baldwin v. D.C. Off. of Emp. Appeals*, 226 A.3d 1140, 1146 n.12 (D.C. 2020) (denying due process challenge where employee was "provided with advance[ ] written notice" of his proposed termination). FEMS did just this. Mr. Dargan was sent advance written notice of his termination on October 31, 2012. He had an opportunity to respond, which he took when he challenged his termination and received an administrative review by a hearing officer. Mr. Dargan was then

able to appeal his termination first to the OEA, where he received an evidentiary hearing and a written decision, and subsequently to both the Superior Court and this court several times over. Thus, because Mr. Dargan was afforded both "notice and [an] opportunity to be heard," his argument that he was denied due process fails. *Davis v. Univ. of D.C.*, 603 A.2d 849, 853 (D.C. 1992) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).

### 2. Due Process Under District Law

We likewise conclude that Mr. Dargan's argument that he was denied sufficient due process under District law fails on the merits. Mr. Dargan's termination came on the heels of extensive remediation and ultimately resulted from his own failure to maintain an active DOH certification at the EMT-Intermediate level. Mr. Dargan argues that he was denied due process because he was precluded from taking advantage of every opportunity for remediation available to him under District law. Specifically, he argues that he did not receive "the full extent of testing and training provided for in" Bulletin No. 83. Mr. Dargan, however, waived this argument before the OEA when he conceded that Bulletin No. 83's procedural requirements did not apply to DOH recertification. He cannot now relitigate it. *See Sims v. District of Columbia*, 933 A.2d 305, 309-10 (D.C. 2007); *see also Poth v. United States*, 150 A.3d 784, 789 n.8 (D.C. 2016) ("Waiver is different from

forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))).

Regardless, this claim fails on the merits. We previously held in this case that "the testing procedures of Bulletin No. 83 by their plain language apply only to [NREMT] certification, not [DOH certification]." *Dargan v. D.C. Off. of Emp. Appeals*, No. 17-CV-253, Mem. Op. & J. at 3 (D.C. Dec. 20, 2019). Mr. Dargan was terminated for failing to maintain his *DOH* certification, not his NREMT certification, making Bulletin No. 83 irrelevant to Mr. Dargan's case except for the fact that it requires EMTs employed by FEMS to hold both certifications. *Id.* at 2.

As to whether Mr. Dargan received the full extent of remediation he was procedurally due under District law, we agree with the OEA's conclusion that he did. Based on the record, the OEA reasonably found that Mr. Dargan "underwent an extensive six (6) month remediation process involving classroom education, laboratory education, and numerous field evaluations." The OEA also noted that Mr. Dargan received an additional twelve days of remediation at the training academy after he failed his initial assessment with Dr. Miramontes. Finally, Mr. Dargan has pointed to no provision in District law that would entitle him to remediation beyond

what FEMS provided, which, as Dr. Miramontes testified, was already "unusually [and] exceptionally long."

Next, Mr. Dargan's attempt to frame his termination as something he had no control over, and thus a violation of due process, is misguided. Under the DOH recertification process, both the applicant and the FEMS Medical Director (Dr. Miramontes) were required to sign and date the application. Mr. Dargan argues that his certification lapsed because Dr. Miramontes refused to sponsor and sign his application, rendering it incomplete and resulting in his termination. While Dr. Miramontes's refusal to sponsor Mr. Dargan's DOH recertification is relevant to its expiration, it is not the cause of it. Mr. Dargan's failure, after extensive remediation, to pass either of Dr. Miramontes's skills assessments is what caused Dr. Miramontes to withdraw his sponsorship. As Mr. Dargan himself concedes, Dr. Miramontes, as the FEMS Medical Director, "must have the absolute right—short of discriminatory animus—to protect the public by designating which EMTs and Paramedics are to be permitted to practice under his licens[e]." *See* D.C. Code § 5-404.01(e)(1) (explaining that EMTs and paramedics practice under the license of the Medical Director); *id.* § 5-404.01(d) (explaining that the Medical Director is responsible for "[m]edical training" and "[q]uality assurance of medical services"); *id.* § 5-404.01(e)(2) (explaining that the Medical Director may be held "personally

liable" in certain circumstances for "death or injury" caused by EMTs and paramedics under his license).[2]

As such, Dr. Miramontes was responsible only for evaluating Mr. Dargan and deciding whether to sign off on his recertification as an EMT-Intermediate based on his evaluation of Mr. Dargan's competency. Dr. Miramontes did just this. Following Mr. Dargan's extensive remediation, Dr. Miramontes administered two practical skills assessments to determine whether Mr. Dargan could perform at the level expected for an EMT-Intermediate. After Mr. Dargan failed the first assessment, Dr. Miramontes gave him an opportunity for additional remediation and offered to sponsor him at the basic life support level as an EMT-Advanced. When Mr. Dargan failed the second assessment, Dr. Miramontes again told him that he would not sponsor him at the EMT-Intermediate level for his DOH recertification, but that he would sponsor him at the lower EMT-Advanced level. Despite this knowledge, Mr. Dargan did not apply for the EMT-Advanced DOH certification, choosing instead to submit to Dr. Miramontes his application for the EMT-Intermediate DOH

---

[2] Dr. Miramontes's decision to withdraw his sponsorship, however, could not have had the effect of denying Mr. Dargan's renewal of his DOH certification such that it would render the expiration of his EMT-Intermediate certification "out of his control." Under D.C. Code § 7-2341.15(b) and Mayor's Order 2009-89, it is DOH, not the FEMS Medical Director, who may "deny renewal of" or otherwise "suspend, or revoke" a DOH certification.

certification. Dr. Miramontes refused to sign Mr. Dargan's application, rendering it incomplete, and likewise refused to submit the application to DOH.

Based on the efforts undertaken by both Dr. Miramontes and FEMS to remediate and retain Mr. Dargan, we conclude that it was reasonable for the OEA to find that Dr. Miramontes's decision to withdraw his sponsorship of Mr. Dargan was "not made arbitrarily" and was a proper exercise of his discretion. Importantly, the OEA also found no legal authority requiring "that any specific action be taken before Dr. Miramontes could decide to withdraw his sponsorship for [Mr. Dargan's] DOH recertification" or that would have required FEMS to submit his unsigned and incomplete application to DOH. While Mr. Dargan may ultimately disagree with Dr. Miramontes's decision to withdraw his sponsorship, we agree with the OEA's finding that his decision was sound and that Mr. Dargan was afforded the required due process under District law.

Finally, Mr. Dargan's argument that the OEA denied him due process by excluding certain witnesses and evidence during his hearing following remand from this court in 2019 also fails. As the OEA explained, the excluded evidence and testimony at issue pertained solely to Mr. Dargan's "allegations of discrimination and retaliation, which are not within the OEA's jurisdiction and ha[d] in fact been raised by [Mr. Dargan] before the Office of Human Rights." Because the OEA rules

make clear that only "material and relevant evidence or testimony shall be admissible," 6-B D.C.M.R. § 626.1, the OEA acted within its purview in deciding to exclude evidence and testimony irrelevant to the allegations before it, namely, whether FEMS followed proper procedures when terminating Mr. Dargan's employment.

For these reasons, we affirm the OEA's conclusion that Mr. Dargan's termination should be upheld because FEMS followed all appropriate procedures. *See Dupree*, 132 A.3d at 154; *Murchison*, 813 A.2d at 205.

### B.    Timeliness

The second issue Mr. Dargan raises is whether his termination was timely. Under D.C. Code § 5-1031(a), any adverse action against a FEMS employee must be commenced within ninety business days of when FEMS "knew or should have known of the act or occurrence allegedly constituting cause." Both parties agree that the act constituting cause here was the expiration of Mr. Dargan's DOH certification as an EMT-Intermediate on June 30, 2012. It is also uncontested that FEMS gave Mr. Dargan advance notice about his removal on October 31, 2012, eighty-nine business days later.

Nonetheless, relying on the phrase "should have known," Mr. Dargan argues that his termination was untimely because the limitations clock started to run not upon the actual expiration date itself but rather once FEMS knew that there was some *possibility* that his certification would expire on June 30. He suggests several potentially relevant dates, including (1) February 3, when Mr. Dargan failed his initial skills assessment and was sent back to the training academy; (2) February 14, when he failed his second skills assessment and Dr. Miramontes wrote to DOH requesting a downgrade in his certification level; and (3) June 25, when Dr. Miramontes asked DOH to revoke Mr. Dargan's EMT-Intermediate certification for the second time.

FEMS contends that nothing in the record suggests that the ninety-day clock could have been triggered before June 30. Section 5-1031(a)'s reference to when an employer "should have known," FEMS argues, addresses situations where the agency does not have actual knowledge of the event constituting cause but nonetheless should have learned about it through the exercise of reasonable diligence. FEMS asserts that the "should have known" language cannot be read to mean that the limitations period can begin to run *before* the event allegedly constituting cause occurs. Embracing Mr. Dargan's interpretation, FEMS says, would lead to "absurd consequences" because it would incentivize FEMS to terminate employees upon the possibility that cause for an employee's termination

might arise in the future, rather than giving employees the benefit of the doubt that they might turn things around and potentially obviate the cause for termination entirely.

At the relevant time, D.C. Code § 5-1031(a) provided:

> Except as provided in subsection (b) of this section, no corrective or adverse action against any sworn member or civilian employee of the Fire and Emergency Medical Services Department or the Metropolitan Police Department shall be commenced more than 90 days, not including Saturdays, Sundays, or legal holidays, after the date that the Fire and Emergency Medical Services Department or the Metropolitan Police Department knew or should have known of the act or occurrence allegedly constituting cause.

Assuming, as the parties agree, that the "act or occurrence allegedly constituting cause" is the expiration of Mr. Dargan's DOH certification on June 30, 2012, FEMS was required to give Mr. Dargan advance notice of his termination by November 1, 2012. FEMS's notice, given on October 31, 2012, was provided within the statutory requirement. Mr. Dargan's arguments to the contrary are not convincing. Because he was terminated for the lapse of his DOH certification, neither Mr. Dargan's failures to pass his skills assessments on February 3 or 14 nor Dr. Miramontes's request that DOH downgrade his certification on February 14 could have triggered the ninety-day clock because at that point Mr. Dargan's DOH

certification was valid. The same is true of June 25, the date Dr. Miramontes asked DOH to revoke Mr. Dargan's certification the second time, because Mr. Dargan's certification expired before DOH acted on his request.

Nothing in the statute suggests that it contemplates that the ninety-day period begins to run when the "act or occurrence" becomes a mere possibility. We turn first to the plain language of the statute. *Cofield*, 295 A.3d at 1196 (D.C. 2023) ("In construing statutes we look to the plain meaning of the statute first, construing words according to their ordinary meaning.") (citation modified). The phrase "knew or should have known" is in the past tense, suggesting that the requisite "act or occurrence allegedly constituting cause" has already occurred. This makes sense: it is the *act* that constitutes cause, rather than the mere possibility of the act. *See Booz Allen Hamilton Inc. v. D.C. Off. of Tax & Revenue*, 308 A.3d 1205, 1209 (D.C. 2024) (explaining that "we will give effect to the plain meaning of a statute when the language is unambiguous and does not produce an absurd result") (citation modified). Adopting the opposite interpretation would incentivize, if not require, FEMS to terminate employees based on the mere possibility or suspicion that cause will arise at some point in the future. This would mean that knowledge on the part of *FEMS*, rather than any act on the part of the *employee*, would constitute cause, a conclusion in direct tension with the phrase "act or occurrence allegedly constituting cause."

We have previously interpreted similar language the same way. As we explained in *Bussineau v. President & Directors of Georgetown College*, the use of the phrase "should have known" in a statute of limitations does not permit the limitations period to begin before the act in question occurs. 518 A.2d 423, 425 (D.C. 1986) (explaining that limitations periods typically begin to run "at the time injury occurs"). To the contrary, this phrase addresses situations where the agency does not have actual knowledge of the event constituting cause but nevertheless should have later learned about it through the exercise of reasonable diligence. *See id.* at 426-27.

Because FEMS had actual knowledge of Mr. Dargan's DOH certification lapsing, the "should have known" language is not applicable on these facts. *See Holmes v. D.C. Dep't of Hous. & Cmty. Dev.*, 231 A.3d 416, 424 (D.C. 2020) ("When the word or is used in a statute, it is presumed to be used in the disjunctive sense, unless the legislative intent is clearly to the contrary.") (quoting *Scott v. United States*, 672 A.2d 579, 581 (D.C. 1996)). And even if we were to set aside FEMS's actual knowledge, the ninety-day limitations period would have been initiated when FEMS, through the exercise of reasonable diligence, should have *discovered* the lapse in Mr. Dargan's certification, which could have occurred at the earliest on June 30, leading to the same conclusion: that Mr. Dargan's termination was timely pursuant to Section 5-1031(a).

Mr. Dargan's reference to our holding in *D.C. Fire & Medical Services Department v. D.C. Office of Employee Appeals*, 986 A.2d 419 (D.C. 2010), involving this same statutory provision, is unpersuasive. There, we upheld the OEA's finding that the FEMS's termination notification was untimely under Section 5-1031(a) because it was sent more than five months after the review of the incident giving rise to the employee's termination occurred. *Id.* at 423-24. We reasoned that because "[t]he history of the ninety-day rule counsels against FEMS'[s] view that only knowledge with a high degree of certainty starts the statute's clock," waiting until the official investigation concluded before issuing a termination notice was unnecessary and the notification was thus untimely. *Id.* at 425-26.

Relying on this reasoning, Mr. Dargan argues that once Dr. Miramontes withheld his sponsorship, FEMS knew or should have known that Mr. Dargan's DOH certification would necessarily expire and FEMS was not required to wait for the "high degree of certainty" conferred by the actual expiration of his certification to initiate his termination, the same way FEMS did not need to wait until the conclusion of the investigation in *D.C. Fire*. *Id.* at 425. *D.C. Fire*, however, is distinguishable. Mr. Dargan argues that the ninety-day limitations period began *before* the "act or occurrence allegedly constituting cause" on the theory that FEMS should have known on an earlier date that it was *likely* to happen. This is in contrast to the order of events in *D.C. Fire*, where the "act or occurrence," consisting of the

employee's improper diversion of a patient, *preceded* the moment when FEMS knew or should have known of that improper diversion. *See id.* at 425-26. Thus, contrary to Mr. Dargan's contention, our holding in *D.C. Fire* supports a reading of the statute under which the ninety-day period begins only once the "act or occurrence" has come to pass, not when it merely starts to be anticipated.

Because Mr. Dargan's proposed interpretation runs counter to the statutory text and our settled case law, we decline to embrace his view. We thus affirm the OEA's finding that his termination was timely.

### III.  Conclusion

For the foregoing reasons, we affirm the OEA's decision upholding Mr. Dargan's termination.

*So ordered*.